UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:25-CV-00119-HBB

LARISSA F.[1]                                                                    PLAINTIFF

VS.

FRANK BISIGNANO, COMMISSIONER OF
SOCIAL SECURITY                                                                  DEFENDANT

## MEMORANDUM OPINION
## AND ORDER

### I.       BACKGROUND

Before the Court is the Complaint (DN 1) of Larissa F. ("Plaintiff") seeking judicial review

of the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g).  Plaintiff (DN 9) and

Defendant (DN 13) have filed a Fact and Law Summary.  Plaintiff did not reply.  For the reasons

that follow, the final decision of the Commissioner is **AFFIRMED**.

Pursuant to 28 U.S.C. § 636(c) and FED. R. CIV. P. 73, the parties have consented to the

undersigned United States Magistrate Judge conducting all further proceedings in this case,

including issuance of a memorandum opinion and entry of judgment, with direct review by the

Sixth Circuit Court of Appeals in the event an appeal is filed (DN 6).  By Order entered December

19, 2025 (DN 7), the parties were notified that oral arguments would not be held unless a written

request therefor was filed and granted.  No such request was filed.

### II.      FINDINGS OF FACT

On May 13, 2022, Plaintiff protectively filed an application for Disability Insurance

---

1 Pursuant to General Order 22-05, Plaintiff's name in this matter was shortened to first name and last initial.

Benefits (Tr. 332-35).  Plaintiff alleged that she became disabled on March 15, 2022, as a result of fibromyalgia, rheumatoid arthritis, osteoarthritis, stomach issues, acid reflux, hypertension, diabetes, bilateral knee pain, back pain, neck pain, problems with walking due to muscle pain and weakness, right hip pain, muscle pain, and anxiety (Tr. 332, 369).  The application was denied initially and upon reconsideration (Tr. 212-30).

On January 24, 2024, Administrative Law Judge ("ALJ") Stacey Foster conducted a hearing (Tr. 32).  ALJ Foster determined that Plaintiff has the following severe impairments: degenerative disc disease of the thoracic and lumbar spine; osteoarthritis of the bilateral knees; and obesity (Tr. 34).  The ALJ also determined that Plaintiff has the following nonsevere impairments:  GERD, asthma, hypertension, type 2 diabetes mellitus, hyperlipidemia, vitamin D deficiency, rheumatoid arthritis, fibromyalgia, lupus, undifferentiated connective tissue disease, irritable bowel syndrome, fatty liver, and generalized anxiety disorder (Tr. 34-35).  The ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. § 404.1567(a) with certain postural and environmental limitations (Tr. 37).  ALJ Foster found that Plaintiff is capable of past relevant work as a personnel scheduler (Tr. 41).

The ALJ concluded that Plaintiff has not been under a disability from March 15, 2022, through the date of the decision (Tr. 41).  Plaintiff timely filed a request for the Appeals Council to review the ALJ's decision (Tr. 325-27), which the Appeals Council denied (Tr. 1-4).

### III.    CONCLUSIONS OF LAW

#### A.    Standard of Review

Review by the Court is limited to determining whether the findings set forth in the final decision of the Commissioner are supported by "substantial evidence," 42 U.S.C. § 405(g); *Cotton*

*v. Sullivan*, 2 F.3d 692, 695 (6th Cir. 1993); *Wyatt v. Sec'y of Health & Hum. Servs.*, 974 F.2d 680, 683 (6th Cir. 1992), and whether the correct legal standards were applied.  *Landsaw v. Sec'y of Health & Hum. Servs.*, 803 F.2d 211, 213 (6th Cir. 1986).  "Substantial evidence exists when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way."  *Cotton*, 2 F.3d at 695 (quoting *Casey v. Sec'y of Health & Hum. Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993)).  In reviewing a case for substantial evidence, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility."  *Cohen v. Sec'y of Health & Hum. Servs.*, 964 F.2d 524, 528 (6th Cir. 1992) (quoting *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984)).

When the Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 1-4), the ALJ's decision became the final decision of the Commissioner.  20 C.F.R. §§ 404.955(b), 404.981, 422.210(a); *see* 42 U.S.C. § 405(h) (finality of the Commissioner's decision).  Thus, the Court reviews the ALJ's decision and the evidence that was in the administrative record when the ALJ rendered the decision.  42 U.S.C. § 405(g); 20 C.F.R. § 404.981; *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996).

### B.    The Commissioner's Sequential Evaluation Process

The Social Security Act authorizes payment of Disability Insurance Benefits and Supplemental Security Income to persons with disabilities.  42 U.S.C. § 401 et seq. (Title II Disability Insurance Benefits).  The term "disability" is defined as an

> [I]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]

42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a); *Barnhart v. Walton*, 535 U.S. 212, 214 (2002).

3

The Commissioner has promulgated regulations setting forth a five-step sequential evaluation process for evaluating a disability claim. *See* "Evaluation of disability in general," 20 C.F.R. § 404.1520. In summary, the evaluation proceeds as follows:

1) Is the claimant engaged in substantial gainful activity?

2) Does the claimant have a medically determinable impairment or combination of impairments that satisfies the duration requirement and significantly limits his or her ability to do basic work activities?

3) Does the claimant have an impairment that meets or medically equals the criteria of a listed impairment within Appendix 1?

4) Does the claimant have the RFC to return to his or her past relevant work?

5) Does the claimant's RFC, age, education, and past work experience allow him or her to perform a significant number of jobs in the national economy?

20 C.F.R. § 404.1520(a)(4)(i)-(v).

### C.    Severe Impairment Findings

*1.    Arguments of the Parties*

Plaintiff contends the ALJ erred by not finding her mental impairments and sacroiliitis to be severe impairments (DN 9 PageID # 1085-87). Plaintiff avers that sacroiliitis was not considered as a medically determinable impairment at step two, so limitations caused by the condition are "not encompassed within the adjudged sedentary RFC." (*Id.* at PageID # 1085). Plaintiff believes that the mental impairments of panic disorder and generalized anxiety disorder were also found to be nonsevere, is also error and unsupported by the evidence (*Id.* at PageID # 1087). Plaintiff asserts that this omission is not harmless error, as a result the RFC is not supported by substantial evidence (*Id.*).

In response, Defendant relies on *Emard v. Comm'r of Soc. Sec.* that failing to find an

impairment to be severe at step two is "legally irrelevant" if other impairments are severe (DN 13 PageID # 1106) (citing 953 F.3d 844, 852 (6th Cir. 2020)).  Plaintiff contends that so long as one impairment is found to be severe, then the ALJ must consider all severe and nonsevere impairments in the remaining steps, so any error at step two is harmless (*Id.*) (citing *Maziarz v. Sec'y of Health & Hum. Servs.*, 837 F.2d 240, 244 (6th Cir. 1987)).  Alternatively, Defendant avers substantial evidence supports the ALJ's decision to not find sacroiliitis, panic disorder, or general anxiety disorder to be severe impairments at step two (*Id.* at PageID # 1107-08).

  2.  *Applicable Law*

At the second step in the sequential evaluation process the claimant must demonstrate she suffers from a "severe medically determinable physical or mental impairment that meets the duration requirement . . . or a combination of impairments that is severe and meets the duration requirement . . ." 20 C.F.R. § 404.1520(a)(4)(ii); Social Security Ruling 16-3p, 2017 WL 5180304, at *11 (Oct. 25, 2017); *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) (per curiam).  To satisfy the "severe" requirement the claimant must demonstrate the impairment or combination of impairments "significantly limit" his or her physical or mental ability to do "basic work activities." 20 C.F.R. § 404.1522(a).  The regulations define "basic work activities" as "the abilities and aptitudes necessary to do most jobs."  20 C.F.R. § 404.1522(b).  To satisfy the "medically determinable" requirement the claimant must present objective medical evidence (i.e., signs, symptoms, and laboratory findings) that demonstrates the existence of a physical or mental impairment.  20 C.F.R. § 404.1521; Social Security Ruling 16-3p, 2017 WL 5180304, at *11 (Oct. 25, 2017).  To satisfy the "duration" requirement the impairment "must have lasted or must be expected to last for a continuous period of at least 12 months."  20 C.F.R. § 404.1509.

Upon determining that a claimant has at least one severe impairment, the ALJ must continue with the remaining steps in the disability evaluation outlined above. *Maziarz v. Sec'y of Health & Hum. Servs.*, 837 F.2d 240, 244 (6th Cir. 1987). As the ALJ considered the limitations imposed by the plaintiff's medically determinable severe and non-severe impairments in determining whether the plaintiff retained sufficient residual functional capacity to allow her to return to her past relevant work and to other jobs in the national economy, the ALJ's failure to find that certain impairments are "severe" within the meaning of the regulations could not constitute reversible error. *Id.*[2] Stated differently, the Sixth Circuit has found it "legally irrelevant" that some of a claimant's impairments are found non-severe, when other impairments are found to be severe, because a finding of severity as to even one impairment clears the claimant of step two of the analysis and the ALJ should consider both the severe and non-severe impairments in the remaining steps. *See Anthony v. Astrue*, 266 F. Appx. 451, 457 (6th Cir. 2008) (citing *Maziarz*, 837 F.2d at 244). Thus, once a severe impairment is found, the ALJ must consider the "combined effect" of all the medically determinable severe and non-severe impairments in assessing a claimant's RFC. *See* 20 C.F.R. §§ 404.1523(c), 404.1545(a)(2); *Simpson v. Comm'r of Soc. Sec.*, 344 F. Appx. 181, 190-91 (6th Cir. 2009); *White v. Comm'r of Soc. Sec.*, 312 F. Appx. 779, 787 (6th Cir. 2009).

3.    *Discussion*

ALJ Foster did not make findings of severe or nonsevere as to Plaintiff's panic disorder or

---

2 Other cases that have found the purported error harmless. *Mish v. Comm'r of Soc. Sec.*, No. 1:09-CV-753, 2011 WL 836750, at *1-2 (W.D. Mich. Mar. 4, 2011); *Stephens v. Astrue*, No. 09-55-JBC, 2010 WL 1368891, at *2 (E.D. Ky. Mar. 31, 2010); *Meadows v. Comm'r of Soc. Sec.*, No. 1:07-CV-1010, 2008 WL 4911243, at *12-13 (S.D. Ohio Nov.13, 2008); *Jamison v. Comm'r of Soc. Sec.*, No. 1:07-CV-152, 2008 WL 2795740, at *8-9 (S.D. Ohio July 18, 2008); *Tuck v. Astrue*, No. 1:07-CV-00084-EHJ, 2008 WL 474411, at *3 (W.D. Ky. Feb. 19, 2008).

sacroiliitis.  The ALJ did find Plaintiff's generalized anxiety disorder to be nonsevere (Tr. 35).

Plaintiff contends the ALJ should have found these three conditions to be severe at step two,

credited Plaintiff's testimony that she needs to alternate positions due to pain, and so the resulting

RFC is not supported by substantial evidence (DN 9 PageID # 1085-87).  In light of *Emard* and

*Maziarz* Plaintiff's argument is unavailing.

First, as to Plaintiff's generalized anxiety disorder, ALJ Foster considered all severe and

nonsevere impairments when formulating Plaintiff's RFC (Tr. 37) in accordance with regulations.

*See* 20 C.F.R. §§ 404.1523(c), 404.1545(a)(2).  Thus, any error at step two would be harmless.

*Maziarz*, 837 F.2d at 244; *Emard*, 953 F.3d at 853.  Plaintiff believes that the medical opinion of

Dr. Kerrick showed greater impairment that the ALJ should have adopted (DN 9 PageID # 1087).

Any error in adopting a medical opinion or determining the RFC cannot be addressed at step two

but is separate grounds.

Second, neither sacroiliitis nor panic disorder can be considered a medically determinable

impairment because "a physical or mental impairment must be established by objective medical

evidence from an acceptable medical source."  20 C.F.R. § 404.1521.  Plaintiff's own statement

of symptoms, diagnosis, or a medical opinion will not establish existence of an impairment.  *Id.*

Though the ALJ does not address them, Plaintiff did not identify either condition in her application

for disability (*See* Tr. 369).  Plaintiff relies on a visit in January 2024 to Dr. Vessels for back pain

where Dr. Vessels notes:  "She has some SI joint diagnostic maneuvers that are positive for

sacroiliitis including Fortin's Faber's hip compression and thigh thrust exam sign." (Tr. 187).

This is the only record Plaintiff relies on that mentions sacroiliitis by name.  Dr. Vessels seems to

consider sacroiliitis but diagnoses lumbar radiculopathy for further treatment of a lumbar injection

(Tr. 188). The undersigned's review of the record shows one other instance in which sacroiliitis is mentioned: in a follow-up visit for lumbar radiculopathy in April 2024, the provider lists sacroiliitis in the section "Assessment / Plan" but only prescribed further treatment for lumbar radiculopathy (Tr. 166). Further muddying the waters is that Plaintiff's chief complaints are related to her thoracic and lumbar spine pain, whose symptoms seem to be identical to sacroiliitis (*See* Tr. 38-39). Plaintiff's reliance on hearing testimony of back pain radiating to her calves does not clarify whether the symptoms are attributable to lumbar radiculopathy or sacroiliitis (DN 9 PageID # 1086) (*See* Tr. 97, 187).

The only mention of a panic disorder is found under "Diagnostic Impressions" in a report prepared by Dr. Kerrick after a consultative exam prepared for this disability application (Tr. 708). Absent objective medical evidence from a treating source diagnosing, neither condition can be considered a medically determinable impairment.

### D.      Medical Opinion Evidence:  Dr. Kerrick

*1.      Arguments of the Parties*

Plaintiff avers the ALJ failed to include mental limitations for panic disorder and anxiety in the RFC (DN 9 PageID # 1088-89). Although Plaintiff names sacroiliitis in its argument summary, sacroiliitis is never mentioned again, so Plaintiff has waived this argument (*Id.* at PageID # 1088). Plaintiff asserts the ALJ should have adopted Dr. Kerrick's psychiatric opinion, which would have resulted in finding Plaintiff not capable of performing past relevant work and thus disabled (*Id.*). Plaintiff believes the ALJ overlooked medical evidence in concluding no limitations resulted from mental impairments and supporting evidence consistent with Dr. Kerrick's opinion (*Id.* at PageID # 1090-92). Plaintiff avers ALJ Foster failed to consider

Plaintiff's hearing testimony, resulting in a lack of comparison of medical evidence to nonmedical sources as required under 20 C.F.R. § 404.1520c(c)(2) by failing "to evaluate the consistency between a medical opinion and non-medical sources in the claim as required by the regulation" (DN 9 PageID # 1092).  Plaintiff believes her testimony demonstrates the severity of her mental impairments and inability to perform past relevant work (*Id.* at PageID # 1093).

In response, Defendant avers the ALJ properly considered supportability and consistency when evaluating Dr. Kerrick's opinion and concluding it was unpersuasive (DN 13 PageID # 1110).  Defendant contends Plaintiff's reliance on a depression survey from one visit does not render the ALJ determination unsound (*Id.* at PageID # 1111-12).  Defendant asserts the ALJ's decision is supported by substantial evidence and properly rejected Dr. Kerrick's opinion (*Id.* at PageID # 1111-14).  As to considering Plaintiff's hearing testimony, Defendant believes the argument is meritless as the ALJ sufficiently explained how Dr. Kerrick's opinion was inconsistent with Plaintiff's unremarkable behavior at the hearing (*Id.* at PageID # 1115) (citing Tr. 40).

2.    *Applicable Law*

ALJs evaluate the "persuasiveness" of medical opinions and prior administrative medical findings by utilizing the five factors listed in paragraphs (c)(1) through (c)(5).  20 C.F.R. § 404.1520c(a)-(b).  The five factors are supportability, consistency, relationship with the claimant, specialization, and other factors.  20 C.F.R. § 404.1520c(c)(1)-(5).  Of these five factors, the two most important are supportability and consistency.  20 C.F.R. § 404.1520c(a) and (b)(2).  Further, the regulations require ALJs to explain how they considered the supportability and consistency factors in determining the persuasiveness of the medical source's opinion.  20 C.F.R. § 404.1520c(b)(2).  Notably, under the regulations ALJs "may, but are not required to, explain how"

they considered the three other factors in determining the persuasiveness of the medical source's opinion.  20 C.F.R. § 404.1520c(b)(2).

3.      *Discussion*

ALJ Foster imposed no mental limitations in the RFC, finding Plaintiff's "generalized anxiety disorder does not cause more than minimal limitation" in her ability to work (Tr. 35). Because Plaintiff's panic disorder is not a medically determinable impairment, as discussed above, no error exists as to that condition.  As to Plaintiff's anxiety, Plaintiff believes Dr. Kerrick's opinion reflects "Plaintiff's ability to carry out simple instructions, perform at a consistent pace, interact with others and respond to changes and pressures in a work environment were affected by her mental health symptoms to a moderate to marked degree." (DN 9 PageID # 1088) (citing Tr. 709).  ALJ Foster found Dr. Kerrick's opinion to be unpersuasive:

> With regard to the claimant's mental impairment, none of her providers reported that the claimant had severe mental impairment symptoms, and the claimant was not prescribed psychiatric medication.  As discussed above, Dr. Kerrick reported that the consultative psychological examination revealed that that the claimant's immediate, recent, and remote memory were good, her attention and concentration were fair, her intelligence was in the average range, and she seemed to have normal capacity for organization and decision making (Exhibit 5F).  Dr. Kerrick reported diagnostic impressions of panic disorder and generalized anxiety disorder, and opined that the claimant's capacity to understand, remember, and carry out instructions towards performance of simple repetitive tasks was affected to no degree, her ability to understand and remember detailed instructions was affected by to a mild degree, her ability to carry out simple instructions, carry out detailed instructions, and perform at a consistent or reasonable pace without interruption from psychological symptoms was affected to a marked degree, her ability to interact with the public, supervisors, and co-workers, and accept criticism from supervisors was affected to a moderate to marked degree, and her ability to respond to changes, stress, or pressures in a work environment was affected to a marked degree (Exhibit 5F).
>
> The State agency psychological consultants, Alicia Fedewa, Ph.D and Mary Thompson, Ph.D, both opined that the claimant's mental impairment was nonsevere, and caused the claimant only mild limitations in understanding,

remembering, or applying information, interacting with others, concentrating, persisting, or maintaining pace, and adapting or managing herself (Exhibits 2A and 4A).  The opinions of Dr. Fedewa and Dr. Thompson are persuasive because they are consistent with each other, they are supported by detailed written explanations that show that they are grounded on the evidence, they are consistent with and supported by the objective mental status examination findings reported by the claimant's own providers and by Dr. Kerrick, and they are consistent with and supported by the evidence received at the hearing level, including the testimony of the claimant.  In contrast, the opinion of Dr. Kerrick, as set forth in the report from the consultative psychological examination (Exhibit 5F) is not persuasive because it is not consistent with or supported by the objective mental status examination findings reported by the claimant's own providers and by Dr. Kerrick herself, and it is not consistent with and supported by the evidence received at the hearing level, including the testimony of the claimant.  The limitations in Dr. Kerrick's opinion are completely out of proportion when compared to the rather benign clinical examination findings that she reported.  The evidence received at the hearing level supports a finding that the claimant has no severe mental impairment and that she had no more than mild limitations on her mental functional abilities.

(Tr. 39-40).  Plaintiff's contention that the ALJ's "rationale for rejection is stated in rather broad terms[]" (DN 9 PageID # 1089) overlooks the ALJ's detailed discussion at step two:

The first functional area is understanding, remembering or applying information. In this area, the claimant has mild limitation.  In making this finding, I rely on the distinct absence of signs from the claimant's health providers that would demonstrate anything more than difficulty in this area, the report from the consultative psychological examination, and the claimant's own reports and hearing testimony.  In the report from the consultative psychological examination completed on October 25, 2022, Sarah Kerrick, Psy.D reported that a clinical examination revealed that the claimant's immediate recall was good, and that the claimant demonstrated good recent and remote memory (Exhibit 5F).  In her function reports, the claimant reported that she was able to complete activities of daily living such as preparing meals, completing light housekeeping tasks, leaving her residence independently, driving a car, shopping in stores and by telephone, and managing her finances (Exhibits 4E and 12E).  At the hearing, I observed that the claimant paid good attention, was well focused, understood the questions, and gave relevant and detailed answers.  The claimant was able to give detailed responses to questions regarding the history of her employment and medical treatment.  This finding is also consistent with the opinions of the two independent State agency psychological consultants, who agreed that the claimant had a mild limitation in her ability to understand, remember, and apply information (Exhibits 2A and 4A).

The next functional area is interacting with others.  In this area, the claimant has mild limitation.  In her function reports, the claimant reported that she did not have

11

any problems getting along with family, friends, neighbors, or others (Exhibits 4E and 12E). Similarly, in a third party function report, the claimant's sister-in-law also reported that the claimant had no problems getting along with others, and further reported that the claimant and her husband came to her home for Sunday lunch at least twice a month and that the claimant visited with friends at a restaurant and came to family meals at least once a week (Exhibit 11E). None of the records from any of the claimant's medical providers report that the claimant had any particular difficulty getting along with others in a treatment setting (either with staff or with other patients). The claimant was polite and appropriate at the hearing and responded to questions adequately and cooperatively. This finding is also consistent with the opinions of the two independent State agency psychological consultants, who agreed that the claimant had a mild limitation in her ability to interact with others (Exhibits 2A and 4A).

The third functional area is concentrating, persisting or maintaining pace. In this area, the claimant has mild limitation. In her function reports, the claimant reported mental limitations in memory, completing tasks, concentration, understanding, and following instructions (Exhibits 4E and 12E), and in response to pain questionnaires, the claimant reported that her chronic pain limited her ability to think and concentrate (Exhibits 1E and 13E). Dr. Kerrick reported that the claimant's attention and concentration were fair, noting that the claimant was able to complete serial sevens with 3/5 accuracy until stopping due to self-reported anxiety, gave correct responses to 2/3 simple math computations, and could recall 5 digits forward and 4 digits backward, indicating that the claimant's working memory or complex attention was grossly intact (Exhibit 5F). At the hearing, the claimant was able to concentrate, as she was able to understand the questions asked, without requesting repetition or rephrasing, and was able to give relevant responses to the questions. This finding is also consistent with the opinions of the two independent State agency psychological consultants, who agreed that the claimant had a mild limitation in her ability to concentrate, persist, or maintain pace (Exhibits 2A and 4A).

The fourth functional area is adapting or managing oneself. In this area, the claimant has mild limitation. The reports that the claimant has given to her treating sources indicate a broad range of independent function, including complete independence with eating, grooming, bathing, dressing, toileting, and mobility. The claimant's medical records consistently report that she was well nourished, and appropriately dressed and groomed (Exhibits 2F, 3F, 7F, 8F, 9F, 11F, 12F, 13F, 17F, and 21F). In her function reports, the claimant reported that she could prepare meals, complete light housekeeping tasks, leave her residence independently, drive a car, shop in stores and by telephone, and manage her finances (Exhibits 4E and 12E). It is further noted that none of the claimant's own medical sources reported that the claimant had any difficulty understanding treatment recommendations, maintaining conversation in the treatment setting, or asking appropriate questions,

> and the medical record documents that the claimant understood long and short term goals, medication risks and side effects, and symptoms of her conditions. This finding is also consistent with the opinions of the two independent State agency psychological consultants, who agreed that the claimant had a mild limitation in her ability to adapt and manage herself (Exhibits 2A and 4A).

(Tr. 35-36). Reading the ALJ's opinion holistically, the ALJ's discussion at steps two and five of Dr. Kerrick's opinion is detailed and thorough. *Carter v. Comm'r of Soc. Sec.*, No. 5:24-CV-00087-KKC, 2024 WL 5055830, at \*3 (E.D. Ky. Dec. 10, 2024) ("The ALJ's decision must be read holistically.").

Next, Plaintiff contends the ALJ misstated the evidence that none of her providers reported that she experienced severe mental health symptoms, when Plaintiff did report anxiety, inability to concentrate, and scored in the moderately severe range on a depression survey as part of a mental health screening on September 28, 2023 (DN 9 PageID # 1090) (citing Tr. 39, 145-47). ALJ Foster stated "none of her providers reported that the claimant had severe mental impairment symptoms, and the claimant was not prescribed psychiatric medication" when discussing the persuasiveness of Dr. Kerrick's opinion (Tr. 39). First, the records show Plaintiff reported feeling anxiety, inability to concentrate, trouble falling asleep, and scored in the "moderately severe range" in a depression survey, but does not indicate the intensity, frequency, or duration of these symptoms, so while Plaintiff reported mental impairment symptoms, it is not evidence of *severe* mental impairment (Tr. 145). Second, even if the ALJ overlooked this report, one instance of symptoms in a multi-year span of claimed impairment is not strong evidence in support of disabling impairment. Furthermore, the ALJ relied on much more than just the lack of reported symptoms to providers, but also on "the distinct absence of signs from the claimant's health providers that would demonstrate anything more than difficulty in this area, the report from the consultative psychological examination, and the claimant's own reports and hearing testimony" as well as third-

13

party function reports and the opinions of two state agency consultants (Tr. 35).  In sum, substantial evidence supports the ALJ's decision.

Plaintiff then contends that the ALJ did not adequately support her finding that Dr. Kerrick's opinion is unpersuasive as required under by 20 C.F.R. § 404.1520c (DN 9 PageID # 1090).  Plaintiff states the "decision failed to report that mood was 'anxious' under the 'general observations' portion of the evaluation report" (DN 9 PageID # 1090) (citing Tr. 705).  But the inquiry is whether the ALJ's determination is supported by substantial evidence, "even if that evidence could support a decision the other way."  *Cotton*, 2 F.3d at 695.  Thus, it is not true that any "[f]ailure to include the observation of mood in a mental evaluation exam is contrary to the type of review prescribed by the regulation" (DN 9 PageID # 1090).  As evidenced by the numerous pages of the ALJ's decision related *supra*, the ALJ thoroughly discussed supportability at step two (Tr. 35-36).  Plaintiff herself points out that Dr. Kerrick "noted observations of good memory, fair attention and concentration and average intelligence." (DN 9 PageID # 1090) (referencing Tr. 39, 707-08).  Even crediting that Dr. Kerrick observed Plaintiff's mood to be anxious does not undermine the substantial evidence supporting the ALJ's determination that Dr. Kerrick's opinion is unsupported.

Plaintiff next contends the ALJ "further fails to acknowledge the rational [sic] for the level of impairments which was described in Dr. Kerrick's report" as the "doctor went into a full explanation of her reasons for assigning limitations" (*Id.* at PageID # 1091).  Plaintiff relies on a portion of Dr. Kerrick's report where the doctor is merely repeating Plaintiff's own statements under the heading "Background Information" (*Id.*) (citing Tr. 706-07).  Dr. Kerrick's rationale is contained under "Functional Capacities" where Dr. Kerrick assesses her limitations, bolstered by

14

the results under "Mental Status Examination" (Tr. 707-08). Thus, the ALJ did not fail to consider supporting explanations as required under 20 C.F.R. § 404.1520c(c)(1) because Plaintiff's self-reported background information is not explanatory rationale.

Lastly, Plaintiff avers the ALJ did not sufficiently scrutinize Plaintiff's hearing testimony for how it was consistent with Dr. Kerrick's opinion (DN 9 PageID # 1092-93). To be clear, Plaintiff does not question the sufficiency of the ALJ's consideration of Plaintiff's subjective allegations pursuant to 20 C.F.R. § 404.1529 and Social Security Ruling 16-3p. Plaintiff's argument attacks the sufficiency of the ALJ's persuasiveness findings that ALJ Foster should have considered Plaintiff's hearing testimony when evaluating consistency (DN 9 PageID # 1092-93).

ALJ Foster considered Plaintiff's hearing testimony, stating:

> In contrast, the opinion of Dr. Kerrick, as set forth in the report from the consultative psychological examination (Exhibit 5F) is not persuasive because it is not consistent with or supported by the objective mental status examination findings reported by the claimant's own providers and by Dr. Kerrick herself, and it is not consistent with and supported by the evidence received at the hearing level, including the testimony of the claimant.

(Tr. 40). ALJ Foster detailed Plaintiff's symptoms from two pain questionnaires, a fatigue questionnaire, a third-party function report from her sister-in-law, two function reports, and hearing testimony (Tr. 38) (citing Ex. 1E, 4E, 6E, 11E, 12E, 13E). The ALJ stated that Plaintiff's testimony at the hearing was consistent with these other reports, neatly summing up her testimony without need to go through a detailed analysis separately (Tr. 38). Beyond an ALJ's general duty to consider the record as a whole, an ALJ is not required to address a specific piece of evidence, such as Plaintiff's hearing testimony, in detail when evaluating persuasiveness of a medical opinion. *Boseley v. Comm'r of Soc. Sec.*, 397 F. App'x 195, 199 (6th Cir. 2010) ("Neither the ALJ nor the Council is required to discuss each piece of data in its opinion, so long as they consider the

evidence as a whole and reach a reasoned conclusion."); *see also Hurst v. Sec'y of Health & Human Servs.*, 753 F.2d 517, 519 (6th Cir. 1985) ("[F]ailure to consider the record as a whole undermines the Secretary's conclusion."). Furthermore, ALJ Foster concluded that Plaintiff's subjective complaints were unpersuasive and warranted no mental limitations (*Id.*). It follows that the ALJ would not then extensively consider whether Plaintiff's unpersuasive complaints were consistent with a medical opinion. In sum, no error exists warranting remand.

### E. Conclusion

The decision of the Commissioner shall be affirmed. ALJ Foster's decision is adequately supported by substantial evidence and complies with all applicable law. Even crediting Plaintiff's view of the evidence, such as Plaintiff's reported symptoms and Dr. Kerrick's opinion as being persuasive, does not alter the analysis that substantial evidence supports the ALJ's findings. *See Cotton*, 2 F.3d at 695.

### IV.    ORDER

**IT IS HEREBY ORDERED** that the final decision of the Commissioner is **AFFIRMED**.

H. Brent Brennenstuhl
**H. Brent Brennenstuhl**
**United States Magistrate Judge**

August 3, 2026

Copies:  Counsel